UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-599 (RBW) |
| : | |
| DONNIE DUANE WREN, and : | |
| THOMAS HARLEN SMITH, : | |
| : | |
| Defendants. : | |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing legal and evidentiary issues that may be brought before the Court. The government's evidence will include videos, photographs, testimony from law enforcement witnesses, and statements made by the defendants to law enforcement and on Facebook. In an effort to streamline its presentation and focus on the matters in dispute, the Government sent proposed stipulations to the defendants on February 23 and March 30. To date, Smith has agreed in principle to most of our propositions, but Wren has not agreed to any.[1] Without stipulations, the Government may need to call an additional six witnesses, two of which are out-of-state.

With stipulations, and depending on the length of cross-examination, the government may rest its case as early as Wednesday afternoon, April 19, and should rest its case by Thursday, April 20. With limited stipulations or no stipulations, the government likely would not rest its case until Monday, April 24.

---

[1] Smith proposed two edits, one to the Safeway and one to the Official Proceeding stipulation; so far, we have agreed to the Official Proceeding edit. Wren proposed an edit to the Capitol Building stipulation and offered two exhibits for stipulation; we have agreed to one of the exhibits.

I.  **BACKGROUND**

The government provides this brief recitation of its case to help frame the evidentiary matters discussed below. At trial, the government expects to prove the following:

Smith and Wren, cousins, traveled together from their respective homes in Mississippi and Georgia to Washington, D.C., to attend the former President's rally on January 6, 2021. After attending that rally, they marched on the United States Capitol. The defendants entered the Capitol grounds, which was restricted, around 2:30 p.m. They made their way to the Lower West Terrace, where the stage for the presidential inauguration was under construction. At approximately 3:00 p.m., and armed with a flagpole, Smith entered the Lower West Terrace's tunnel. Using his flagpole like a spear, Smith stabbed at one of the windowpanes in the tunnel doors five times. After several minutes in the tunnel, Smith was sprayed by a chemical agent, lost his hat, and left the tunnel. Outside, he met up again with Wren—who had been watching from the mouth of the tunnel.

At some point thereafter, Smith and Wren climbed up to the Capitol's Upper West Terrace. At about 4:20 p.m., members of the Metropolitan Police Department and Prince George's County Police Department marshalled to assist the United States Capitol Police and clear the rioters from the Upper West Terrace. As officers tried to move rioters, Smith and Wren resisted by pushing against the police officers and their shields. In the fracas that resulted, Smith also kicked an officer to the ground and threw a metal pole at a group of officers, hitting at least one officer in the head.

II.  **STIPULATIONS PROPOSED BY THE GOVERNMENT**

The government has sought stipulations from the defense regarding the defendants' identity, evidentiary foundation, chain of custody, and jurisdictional matters. These matters have been uncontroversial in other January 6 cases—indeed, many of the stipulations have been common in such cases—and they should not be controversial here. It is exceedingly rare for the

Government to reach no agreement on any of them because the result will almost assuredly only be a longer trial with more time spent on issues not in dispute. The Government does not anticipate any material cross-examination about these issues, and even with stipulations, the defendants would remain free to argue about the weight of the evidence.

a. **Identification**

The Government's proposed stipulation reads: "The person pictured in Exhibits A-1 and A-2 is the same Donnie Duane Wren who is charged in this case. The person pictured in Exhibits B-1, B-2 and B-3 is the same Thomas Harlen Smith who is charged in this case." These Exhibits are attached below.

If the defendants do not stipulate to identity, the government will call an arresting agent for each defendant and procure additional testimony regarding each defendant's appearance on January 6, 2021. Both agents are from out of state and would require air travel to attend trial. If Wren does not even agree to the portion of the stipulation identifying Smith, the government may need to call the out-of-state agent who arrested Smith—despite Smith's agreement to the stipulation. The government anticipates that neither defendant will deny his presence at the Capitol, nor will argue that that the Government mistakenly identified him in a video or picture.[2]

b. **United States Capitol Police Closed-circuit Video (CCTV)**

The Government's proposed stipulation reads:

The United States Capitol Police (USCP) operate and maintain closed-circuit video monitoring and recording equipment that captures locations inside and outside of the U.S. Capitol building and on the Capitol grounds. The video equipment timestamps each recording with the date and time at which the footage is captured. The USCP-controlled video equipment was in good working order on January 6, 2021, and video footage recovered from the cameras and equipment for the day of January 6, 2021 is footage of January 6, 2021. The events depicted in the video

---

[2] Indeed, Wren admitted to his presence at the Capitol in a post-arrest interview, and Smith spoke extensively about his presence at the Capitol on Facebook.

3

footage are a fair and accurate depiction of the events at the U.S. Capitol on January 6, 2021. Where the timestamps are visible on the recordings, they are accurate. The video footage was not altered or edited in any way. The video footage is authentic in that it is what it purports to be.

This same stipulation has been used in multiple cases arising out of the events of January 6, 2021. The government is not aware of any case in which CCTV videos were excluded on authenticity grounds, nor even of any case in which a defendant disputed the authenticity of CCTV footage. If Defendants do not agree, we may need to call additional witnesses and procure additional testimony on how CCTV is captured and recorded.

### c. Metropolitan Police Department Body-worn Camera (BWC) Authenticity

The Government's proposed stipulation reads:

The body worn camera videos are created and maintained by the Metropolitan Police Department. They are accurate and were created using reliable methods. The video was not altered or edited in any way. The video is authentic in that it is what it purports to be. The recording software timestamps each recording with the date and time at which the footage is captured. The timestamps are accurate. The video and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

Without this stipulation, the government may need to call additional witnesses and will procure testimony on how BWC works—how it is captured, downloaded, and so forth.

### d. House and Senate CCTV Recordings

The Government's proposed stipulation reads:

The House Recording Studio and the Senate Recording Studio operate and maintain closed-circuit video monitoring and recording equipment that captures locations inside the House Chamber and the Senate Chamber. The video equipment timestamps each recording with the date and time at which the footage is captured. The House Recording Studio and Senate Recording Studio controlled video equipment was in good working order on January 6, 2021, and video footage recovered from the cameras and equipment for the day of January 6, 2021 is footage of January 6, 2021. The events depicted in the video footage are a fair and accurate depiction of the events in the Senate Chamber and House Chamber on January 6, 2021. Where the timestamps are visible on the recordings, they are accurate. The

video footage was not altered or edited in any way. The video footage is authentic in that it is what it purports to be.

Here, even without a stipulation, the government likely can admit the footage without an additional witness's testimony through custodial certifications. *See* Fed. R. Evid. 902(11).

**e.  Description of the Capitol Building and Grounds**

The Government's proposed stipulation reads:

By law, the U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). At the U.S. Capitol, the building itself has 540 rooms covering 175,170 square feet of ground, roughly four acres. The building is 751 feet long (roughly 228 meters) from north to south and 350 feet wide (106 meters) at its widest point. The U.S. Capitol Visitor Center is 580,000 square feet and is located underground on the east side of the Capitol. On the west side of the Capitol building is the West Front, which includes variety of open concrete spaces, a fountain surrounded by a walkway, two broad staircases, and multiple terraces at each floor. On January 6, 2021, the inaugural stage scaffolding was on the West Front of the Capitol building. On the East Front are three staircases, porticos on both the House and Senate side, and two large skylights into the Visitor's Center surrounded by a concrete parkway.

If not stipulated, we may need the USCP witness to describe the Capitol building and grounds in this detail. Defendants will have no sustainable objections to this testimony.[3]

**f.  Timeline of Certification Proceedings**

The Government's proposed stipulation describes the time and order of events pertaining to the certification proceeding. It states when Congress was forced to recess and when it was able to resume and conclude the certification.

---

[3] Wren requested that we add this language to the stipulation: "The Capitol is commonly referred to as The People's House. It is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday except for Thanksgiving Day, Christmas Day, New Year's Day and on Inauguration Day. Admission is free." We refused because the Capitol was not open to visitors on January 6, 2021—as has been confirmed, publicly, by U.S. Capitol Police witnesses in multiple January 6 trials.

5

Without this stipulation, the government may need to introduce Congressional records and elicit testimony describing the timeline in detail. These records, too, likely would be self-authenticating even without a stipulation. *See* Fed. R. Evid. 902(5).

### g. Safeway Facts

The Government's proposed stipulation reads:

On January 6, 2021, at around 3:45 p.m., in response to Mayor Bowser's order imposing a curfew in the District of Columbia because of the events at the U.S. Capitol, Safeway closed all 12 of its stores in the District of Columbia as of 4 p.m. Safeway's stores were supposed to close at 11 p.m. Safeway later determined that its District of Columbia stores made between 18% and 47% less in sales to the public on January 6, 2021, than they had projected to make on that day. Safeway's District of Columbia stores receive their shipments from a warehouse in Pennsylvania. After 4 p.m. on January 6, 2021, the scheduled shipments for the remainder of the day could not be delivered because the stores were closed and no employees were working.

This stipulation deals only with the facts previously testified to by a Safeway witness in other trials. It does not concede that 18 U.S.C. § 231 was an appropriate exercise of Congress's Commerce Clause power, nor does it concede the jury instruction issue that Wren raised as to the interstate commerce element. In short, Wren could stipulate to these facts and preserve his claims on appeal. Without this stipulation, the government may need to call a Safeway witness or introduce additional Safeway materials to establish these facts.

### h. Phone Download Authenticity (Smith)

The Government's proposed stipulation reads:

The Image of the Apple iPhone X with phone number 662-347-8110 ("Smith's Device") is an accurate duplicate of the Digital Media contained on Smith's Device. The Image was created using reliable methods, specifically through the program Cellebrite. The timestamps in the Image are accurate. The Image was not altered or edited in any way. The Image is authentic in that it is what it purports to be. The Image and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

Without this stipulation, the government may need to call additional witnesses and procure testimony on how Cellebrite works and exactly how data was extracted from Smith's phone.

### i. Phone Download Authenticity (Wren)

The Government's proposed stipulation reads:

The Image of the Apple iPhone 11, Serial Number DX3DPFZ9N72Q, with phone number 256-321-3405 ("Wren's Device") is an accurate duplicate of the Digital Media contained on Wren's Device. The Image was created using reliable methods, specifically using the program AXIOM. The timestamps in the Image are accurate. The Image was not altered or edited in any way. The Image is authentic in that it is what it purports to be. The Image and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

Without this stipulation, the government may have to call additional witnesses and procure testimony on how AXIOM works and exactly how data was extracted from Wren's phone.

### j. Facebook (Smith)

The Government's proposed stipulation reads:

The records received from Facebook, Inc. (now Meta Platforms, Inc.) for account 100003229929401 which had a vanity name of tommy.smith.184 are accurate duplicates of the digital media created, received, and maintained as part of the Facebook, Inc. account 100003229929401 through Facebook. The record was created using reliable methods. The timestamps in the Record are accurate. Facebook, Inc.'s systems was in good working order during the creation and retention of the Record, and the text and photographs depicted therein are a fair and accurate depiction of the text and photographs that were submitted and received by Facebook, Inc.'s account 100003229929401. The Record was not altered or edited in any way. The Record is authentic in that it is what it purports to be. The Record and/or any other copies are "admissible into evidence to the same extent as the original," within the meaning of Federal Rule of Evidence 1003.

This is a stipulation to authenticity and chain of custody. Without this stipulation, the government may have to call a witness from Meta Platforms to testify to the authenticity of the messages.

7

## III. ANTICIPATED EVIDENTIARY ISSUES NOT INVOLVING STIPULATIONS

### A. Third-party Video and Photograph Authentication

In addition to the USCP and MPD footage discussed above, the government plans to offer videos recorded on January 6, 2021, by third parties. Some of the third-party video and photographs were taken from reporters who were present at the Capitol. Others were taken by the defendant's fellow rioters or other members of the crowd. Many were obtained through open-source means and are publicly available. The government will establish authenticity by asking the jury to compare them with other, authenticated exhibits—namely USCP and MPD footage. Fed. R. Evid. 901(3). Police footage will confirm that the third-party evidence is what it purports to be: recordings of the same events, captured from a different perspective, and in some cases depicting details that were not fully captured by the USCP or MPD systems. The distinctive characteristics of the defendant's attire, combined with the distinctive characteristics of other rioters captured on USCP and MPD footage, will further help support authentication of these exhibits. *See* Fed. R. Evid. 901(4). Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-

exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.
> …
> (3) *Comparison by an Expert Witness or the Trier of Fact.* A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like.* The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> …
> (9) *Evidence About a Process or System.* Evidence describing a process or system and showing that it produces an accurate result.

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely … the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a

9

reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349; *see also, e.g., Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any reasonable doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

Here, the comparison between police video and third-party video will make clear that the third-party video is authentic. For example, the moment Smith attempted to break the window

inside the tunnel is captured on BWC looking out of the tunnel and on third-party video looking into the tunnel. The colors of Smith's flag, its orientation aimed at the window at the southern side of the door, and the sound of the flagpole hitting the window correspond between these perspectives, establishing the third-party video's authenticity. Rules 901(b)(3) and (4) allow for authentication by this type of comparison and establish a prima facie showing of authenticity.

### B. BWC Authentication through Special Agent Ball and MPD Officers

The Government plans to call Special Agent Michelle Ball before any MPD officers. The Court should admit BWC videos during SA Ball's testimony when she establishes their authenticity through the same means used for third-party videos. *See* Fed. R. Evid. 901. The MPD officers who testify after Agent Ball will be able to further authenticate the videos based on their personal knowledge of the events recorded in them. Fed. R. Evid. 901(b)(1). The Court may allow these exhibits to be admitted through Agent Ball before the officers testify. *See* Fed. R. Evid. 104(b) (evidence may be admitted subject to later proof of relevance). The trial will proceed more efficiently if Agent Ball testifies first and is able to contextualize the videos with each other and with other items of evidence, and the Court should allow testimony to proceed in this fashion. *See* Fed. R. Evid. 611(a) (Court may exercise control over mode and order of presentation of witnesses).

**CONCLUSION**

The Government hopes to resolve evidentiary issues outside the presence of the jury whenever possible. The Court should schedule a brief hearing Monday morning, before jury selection, to decide whatever evidentiary issues it can at that point.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: /s/*Tighe R. Beach*
TIGHE R. BEACH
CO Bar No. 55328
Assistant United States Attorneys
601 D Street NW
Phone: (240) 278-4348
tighe.beach@usdoj.gov

VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street NW
District of Columbia, DC 20530
(202) 252-7566
victoria.sheets@usdoj.gov

MELANIE L. ALSWORTH
Ark. Bar No. 2002095
Trial Attorney
On detail to the USAO-DC
601 D Street, N.W.
Washington, DC 20530
(202) 598-2285
melanie.alsworth2@usdoj.gov

EXHIBIT A-1



EXHIBIT A-2



14

EXHIBIT B-1



EXHIBIT B-2



EXHIBIT B-3

